IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **MARK BEDFORD,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. _____ |
| **ALTUS GROUP U.S., INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT

Plaintiff Mark Bedford ("**Bedford**" or "**Plaintiff**") files this Original Complaint and Request for Declaratory Judgment against Altus Group U.S., Inc. ("**Altus U.S.**" or "**Defendant**"), and would respectfully show the Court as follows:

### I.
### PARTIES

1. Plaintiff Mark Bedford is a United States citizen residing in Tarrant County, Texas.

2. Defendant Altus Group U.S., Inc. is a foreign corporation authorized to do business in Texas, and it may be served by serving its registered agent: C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

### II.
### JURISDICTION AND VENUE

3. Subject matter jurisdiction is proper under 28 U.S.C. § 1332(a)(1) because Bedford and Altus U.S. are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Personal jurisdiction is appropriate against Altus U.S. because Altus U.S. regularly and systematically conducts business in Texas, employs employees in Texas, enters into, performs and breaches contracts in Texas and is generally subject to general personal jurisdiction in Texas. The Court also has specific jurisdiction over Altus U.S. because the events giving rise to the causes of action in this lawsuit occurred in this district.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this district.

## III.
## CONDITIONS PRECEDENT

6. All conditions precedent have been performed or have occurred.

## IV.
## BACKGROUND

A. **Bedford's Employment with Altus U.S.**

7. Mark Bedford is an experienced and successful real property tax professional.

8. In 1997, Bedford co-founded Complex Property Advisors Corporation ("**CPAC**").

9. CPAC specialized in providing tax services, appraisal services and market studies to complex properties.

10. Bedford served as CPAC's Vice President of Property Tax until July 2013. In that time, he helped to build CPAC into a successful business.

11. Altus Group Limited ("**Altus Group**"), according to its website, provides intelligence solutions to commercial real estate professionals, is a Canadian-based company headquartered in Ontario and has 50 global offices and approximately 2,700 employees.

12. Altus Group recognized CPAC's success in the healthcare and industrial industry, calling a merger with CPAC a "particularly attractive opportunity in the US." Altus Group

further acknowledged that an acquisition of CPAC would give Altus Group "strong competitive positioning in the healthcare tax and appraisal space, which is an important and growing market."

13. Accordingly, Altus Group acquired CPAC in July of 2013.

14. In light of Bedford's experience, Altus Group's wholly owned subsidiary, Altus Group U.S., Inc., offered Bedford the position of Senior Director, Complex Property Tax.

15. Bedford accepted the position and began working for Altus U.S. on or about July 1, 2013.

16. At the outset of his employment, Bedford was issued a laptop by Altus U.S.

17. During his tenure at Altus U.S., Bedford continued to excel at his position. In fact, Bedford was ultimately promoted to Executive Vice President, Real Property Tax.

18. As the Executive Vice President, Real Property Tax, Bedford supervised about 95 employees.

19. In 2022, Altus Group made the decision to downsize in an effort to cut business costs.

20. In an effort to amicably facilitate Altus Group's cost-cutting endeavor, Bedford and Altus U.S. negotiated a severance agreement that would end Bedford's employment with Altus U.S and provide him with two years of severance pay that corresponded with a two-year period of noncompetition by Bedford along with other benefits.

21. On December 21, 2022, Bedford and Altus U.S. executed the Separation Agreement and General Release (the "**Separation Agreement**"), which provided for severance benefits paid to Bedford in exchange for Bedford's release of claims against Altus U.S., his agreement and affirmation to abide by certain restrictive covenants and his commitment to continue to cooperate in certain business activities of Altus U.S.

22. Specifically, the Separation Agreement provided that Bedford would be compensated with certain benefits, including severance pay equivalent to "two (2) years of Employee's base salary[,]" additional monetary sums due yearly through January 30, 2025, the designation of "Termination Without Cause" as it relates to equity incentive plans and continued COBRA premiums for up to eighteen months.

23. Bedford's employment with Altus U.S., and, by extension, his multi-decade career in the tax industry, ended on January 1, 2023.

24. Following the end of his employment, Bedford returned his Altus U.S.-issued laptop back to the company.

25. To Bedford's complete surprise, on January 9, 2023, Altus U.S. emailed him a Cease and Desist Letter (the "**Letter**") falsely accusing Bedford of taking confidential and trade secret information and violating the noncompete/nonsolicitation provisions of the Separation Agreement. The Letter went on to state, unequivocally, that it would not be honoring its payment obligations under the Separation Agreement.

26. As of a result of the manufactured and false accusations of breach of the Separation Agreement by Bedford, Altus U.S. declared that it was repudiating its further obligations of the Separation Agreement resulting in a breach of the contract with Bedford.

27. As of the date Altus U.S. unilaterally terminated the Separation Agreement, it had no evidence that Bedford solicited any person or entity which Altus U.S. or CPAC either had an active or sought-after business relationship during the preceding twenty-four months of Bedford's employment.

28. As of the date Altus U.S. unilaterally terminated the Separation Agreement, it had no evidence that Bedford employed or engaged, or even sought to employ or engage, any person or entity employed or engaged by Altus U.S.

29. Similarly, as of the date Altus U.S. unilaterally terminated the Separation Agreement, it had no evidence that Bedford either influenced or sought to influence any person or entity employed or engaged by Altus U.S. into terminating such employment or engagement with Altus U.S.

30. Furthermore, as of the date Altus U.S. unilaterally terminated the Separation Agreement, it had no evidence that Bedford, directly or indirectly, disclosed or revealed, in any manner, to anyone, Altus U.S.' Confidential Information.

31. Upon information and belief, Altus U.S. has also stopped payment on and accrual of equity benefits owed to Bedford.

32. While Altus U.S. definitively states—albeit incorrectly—that it is under no obligation to continue abiding by the terms of the Separation Agreement, it nonetheless expects Bedford to comply with various demands that ensure he remains bound by the restrictive covenants.

33. Not only are the allegations asserted by Altus U.S. unfounded, but they amount to nothing more than a thinly-veiled attempt to deprive Bedford of his bargained-for benefits under the Separation Agreement while ensuring Altus continues to receive its own benefit of the bargain.

34. As a result of Altus U.S.' repudiation, Bedford as suffered a loss of benefits and other compensation bargained-for as part of the Separation Agreement.

## V.
## CLAIMS ASSERTED AND REQUESTS FOR RELIEF

**A.    Count 1: Breach of Contract.**

35. Bedford incorporates the allegations in the preceding paragraphs as if fully set forth herein.

36. Bedford and Altus U.S. entered into a valid and enforceable contract in the form of the Separation Agreement and General Release.

37. Although Bedford tendered performance under the Separation Agreement and General Release, Altus U.S. breached the Separation Agreement by repudiating its obligations under that Agreement.

38. As a result of Altus U.S.' breach of contract, Bedford is entitled to the agreed-upon monetary amounts and benefits provided for in the Separation Agreement.

B. **Count 2: Declaratory Action.**

39. Bedford incorporates the allegations in the preceding paragraphs as if fully set forth herein.

40. As a claim for alternative relief, Bedford seeks a declaration that if Altus U.S. is not required to pay Bedford his separation compensation and benefits, that Bedford is released from all post-employment restrictive covenants to Altus U.S., is parents, subsidiaries and affiliates including but not limited to contractual noncompetition, nonsolicitation, confidentiality and nondisclosure obligations. Bedford's entitlement to the separation compensation and benefits and the enforceability of the restrictive covenants is a real, actual and justiciable controversy.

41. Pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, Bedford requests the Court declare that Bedford is released from his obligations under the Separation Agreement, including, but not limited to, the contractual noncompetition, non-solicitation, non-disparagement and cooperation clauses incorporated by reference therein.

C. **Count 3: Attorneys' Fees and Costs.**

42. Bedford incorporates the allegations in the preceding paragraphs as if fully set forth herein.

43. Because Altus U.S. has breached its contractual obligations to Bedford and required him to file this lawsuit and seek related declaratory relief, Bedford has retained the undersigned law firm and incurred attorneys' fees and costs. Bedford seeks to recover his attorneys' fees and expenses incurred through trial pursuant to Tex. Civ. Prac. & Rem. Code § 38.001; Tex. Civ. Prac. & Rem. Code § 37.009.

## VI.
## PRAYER

For these reasons, Bedford asks for a judgment against Altus for:

1. Payment of all benefits and other compensation set forth in the Separation Agreement;

2. Declaratory Judgment as set forth above in paragraphs 39-41;

3. Reasonable attorneys' fees and all other expenses incurred by Bedford in enforcing his contractual rights;

4. Court cost and pre-judgment and post-judgment interest; and,

5. Such other and further relief as to which Bedford may show himself justly entitled.

Respectfully submitted,

_____
Russell D. Cawyer
State Bar No. 00793482
russell.cawyer@kellyhart.com
William Warren
State Bar No. 00786331
bill.warren@kellyhart.com
Lanie Bennett
State Bar No. 24107299
lanie.bennett@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
**ATTORNEYS FOR PLAINTIFF
MARK BEDFORD**